# IN THE COURT OF APPEALS OF IOWA

No. 18-0358
Filed June 20, 2018

**IN THE INTEREST OF A.B. and J.B.,**
**Minor Children,**

**T.B., Father,**
     Appellant,

**V.F., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Appanoose County, William S. Owens, Associate Juvenile Judge.

The mother and father separately appeal the termination of their parental rights to their children. **AFFIRMED ON BOTH APPEALS.**

Jonathan Willier, Centerville, for appellant father.

Robert F. Bozwell Jr. of Bozwell Law Office, Centerville, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Julie R. DeVries of DeVries Law Office, P.L.C., Centerville, guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**POTTERFIELD, Judge.**

The mother and the father of A.B., born in 2011, and J.B., born in 2016, separately appeal the termination of their parental rights. On appeal, the mother maintains there is not clear and convincing evidence to support termination as the children could have been returned to her care at the time of the termination hearing "or a reasonable period thereafter" and termination is not in the children's best interests. The father also claims termination is not in the children's best interests and asserts the juvenile court should have entered a permanency order placing the children in a guardianship with a relative rather than terminating the father's parental rights.

**I. Background Facts and Proceedings.**

The Iowa Department of Human Services (DHS) became involved with this family in May 2015 upon allegations of lack of supervision and illegal drug use by the parents. A.B., who was then less than four years old, had been found wandering one mile from the family home, and DHS learned she had been unsupervised for approximately two hours. The mother admitted to smoking marijuana daily, but the father denied use of illegal drugs. Both parents agreed to subsequent drug testing, but neither participated. A.B. was adjudicated in need of assistance but remained in her parents' care.

J.B. was born in the family home in April 2016. Soon thereafter, DHS received a report that the mother was using methamphetamine in the home. DHS became concerned the mother had purposely had the child at home to escape detection, as children are commonly tested for drugs at birth in the hospital. The mother showed behavioral indicators she was using the illegal substance, and both

parents refused to sign the DHS safety plan. DHS then sought and obtained a removal order, and the children were placed with their paternal grandmother.

At the April 27 removal hearing, the parents agreed to engage in services and comply with the DHS safety plan, including being tested for illegal drug use. Under these circumstances, the children were returned to the parents' care.

However, when the results from the initial drug test came back less than one week later, both parents tested positive for the use of methamphetamine. Though she initially denied it, the mother later admitted she used methamphetamine during her pregnancy. The parents voluntarily agreed to place the children back in the care of the paternal grandmother. The court ordered the parents to participate in substance-abuse treatment and drug testing. The mother completed a substance-abuse evaluation, which diagnosed her with methamphetamine use disorder, moderate. It was recommended she begin intensive outpatient treatment, which she did not do. The father failed to complete a substance-abuse evaluation and did not otherwise seek treatment.

After a review hearing in September, the voluntary placement of the children with the grandmother became court ordered.

In November 2016, the father was found passed out behind the wheel of a vehicle that was still running. It was reported that the mother was in the backseat of the vehicle at the time. The father was arrested and charged with operating

while intoxicated (OWI) and possession of a controlled substance (methamphetamine) in a correctional institution.[1]

Due to the mother's increased anxiety and self-reported issues she was experiencing as the proceedings continued, the court recommended the mother complete a mental-health evaluation and engage in any recommended treatment.

The termination hearing took place over two dates: November 30, 2017, and January 9, 2018. At the hearing, it was generally agreed the parents are bonded with the children and there are no safety concerns regarding their parenting skills and knowledge when they are sober. However, the former social worker—who had been with the family from June of 2015 until July of 2017—noted ongoing concerns with the family's home. The parents lived in a camper on a relative's land. There was at least one time during the proceedings when the camper lacked electricity and several times the parents reported they had only cold water. Additionally, the camper was small and cluttered. There was less concern with the living situation when DHS first became involved with the family because they had only the one child, and A.B. was old enough to "maneuver through the clutter and not be harmed." However, with the birth of a fourth member of the family, the concern increased. The parents moved to "very nice, well kept" rental home for a short time during the proceedings, but because neither the father nor the mother maintained employment, they were unable to keep up with the rent and returned to living in the camper. Visits could not take place in the parents' home

---

[1] According to exhibits entered at the termination hearing, the father pled guilty to both charges, receiving a deferred judgment for the possession of methamphetamine and a one-year sentence with all but two days suspended for the OWI charge.

and instead occurred in the community. Other than the mother's completion of a substance-abuse evaluation, the parents failed to take any actions to address the department's substance-abuse concerns during the almost three years DHS was involved with the family. Additionally, the mother did not follow recommendations regarding seeking mental-health treatment. The initial social worker described the parents' progress as "very little." Both children remained in the care of their paternal grandmother, where they had been the entire time—except the approximately one week the children were returned to the parents—since April 2016. The paternal grandmother completed the foster-adoptive training and expressed interest in adopting the children.

Following the two-day trial, the juvenile court terminated both parents' parental rights to A.B. pursuant to Iowa Code section 232.116(1)(f) (2017) and to J.B. pursuant to section 232.116(1)(h). The court noted, "There is no question the parents love and care about [the children], but neither has done anything to move any closer to having [the children] returned than when [they] were removed approximately nineteen months ago."

The mother and father separately appeal.

## II. Standard of Review.

We review termination-of-parental-rights proceedings de novo. *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017). "We are not bound by the juvenile court's factual findings, but we give them weight, especially when witness credibility is critical to the outcome." *In re J.E.*, 907 N.W.2d 544, 545 n.1 (Iowa Ct. App. 2017). Proof must be clear and convincing, which means there are no serious or

substantial doubts as to the correctness of conclusions of law drawn from the evidence. *Id.*

**III. Discussion.**

    **A. Mother's Appeal.**

The mother maintains there is not clear and convincing evidence to support termination as the children could have been returned to her care at the time of the termination hearing "or a reasonable period thereafter" and termination is not in the children's best interests.

The fourth element of subsections (f) and (h) allows the court to terminate parental rights when the children, among other things, cannot be returned to the parents' care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4), (h)(4); *see also In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). The mother maintains the children could be returned to her care because the service provider testified the parents regularly participated in visits, employed appropriate disciplinary and parenting skills during those times, and shared a bond with the children. While it was generally agreed that the mother was an able parent when she was sober, the mother had yet to begin substance-abuse treatment despite being diagnosed with methamphetamine use disorder, moderate. The mother also had not taken any steps to deal with her mental-health issues. Additionally, the parents' home was not appropriate for the entire family, and the parents did not offer any evidence to suggest they would be obtaining other housing. Under these circumstances, the children would be at risk of suffering additional adjudicatory harm if returned to the mother. Thus, we agree with the

district court that the children could not be returned to the mother's care at the time of the termination hearing. *See In re M.M.*, 483 N.W.2d 812, 815 (Iowa 1992).

Next, the mother contends the juvenile court should have given her an extension of time in order to "correct and resolve the Department's concerns regarding housing, mental health, and substance abuse treatment." The court may delay permanency if the court determines "that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). Here, DHS was involved with the family from April 2015 to January 2018, with DHS having the same concerns throughout the proceedings. As the district court noted, neither parent has done anything to move any closer to having the children returned during the thirty-three months DHS was involved with the family and the nineteen months the children were removed. Nothing in the record indicates that another six months would correct the situation.

The mother maintains termination was not in the children's best interests. In considering the best interests of the children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child[ren]." *Id.* § 232.116(2). While the mother loves the children and is an able parent during supervised weekly visits in the community, the children need and deserve more. They need a parent who can offer them permanency and stability, *see id.* § 232.116(2)(b)(1), and nothing in the record suggests the mother is able to do so at this time.

Because the statutory grounds for termination have been met and it is in the best interests of the children, we affirm the termination of the mother's parental rights.[2]

**B. Father's Appeal.**

The father does not dispute the statutory grounds for termination have been met. *See P.L.*, 778 N.W.2d at 40 (declining to address whether statutory grounds were met when the parent did not raise the issue on appeal). Rather, he maintains that instead of terminating his parental rights, the best interests of the children required the court to enter a permanency order placing the children in a guardianship with a relative. *See* Iowa Code § 232.104(2)(d)(1) (allowing the court, after a permanency hearing, to transfer guardianship and custody of the child to a suitable person rather than terminate a parental relationship when termination is not in the best interests of the child).

"[P]ermanency orders are not preferred over the termination of parental rights." *In re B.T.*, 894 N.W.2d 29, 33 (Iowa Ct. App. 2017). "[T]he legislature . . . has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990). Moreover, neither the father nor any other party presented any evidence of a relative who was capable and willing to enter into a guardianship. Under these circumstances, we agree with the district court: "It is time for these children to

---

[2] We need not consider whether a permissive factor weighs against termination, as the mother has not raised the issue on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (indicating that if a party does not challenge a particular step in the three-step termination framework, appellate courts need not address the issue); *see also In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (holding "that once the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination under Iowa Code section" 232.116(3)).

achieve permanency, and in these circumstances a guardianship is woefully inadequate to achieve the sort of stable, nurturing and permanent home they both need and deserve."

Because the father does not contest the statutory grounds for termination have been met and the children's best interests are served by termination, we affirm the juvenile court's termination of the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**